IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Robert D. Johnson,                                    )     Civil Action No.  2:12-01475-JMC-BHH
                                                      )
                           Plaintiff,                 )
                                                      )
              vs.                                     )
                                                      )     **REPORT AND RECOMMENDATION**
Carolyn W. Colvin, Acting,                            )     **OF MAGISTRATE JUDGE**
Commissioner of Social Security,                      )
                                                      )
                           Defendant.                 )
_____                     )

        This case is before the Court for a report and recommendation pursuant to Local

Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this

District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

        The paintiff, Robert D. Johnson, brought this action pursuant to Section 1631(c)(3)

of the Social Security Act, as amended (42 U.S.C. § 1383(c)(3), to obtain judicial review of

a final decision of the Commissioner of Social Security ("the Commissioner") regarding his

claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security

Act, as amended (the "Act").

### RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

        The plaintiff was 44 years old on the date of the Administrative Law Judge's (ALJ)

decision. (R. at 16, 18.) He alleged his disability began on March 18, 2010, due to

sarcoidosis, degenerative disc disease, angina, diabetes mellitus, obesity, and mood

disorder. (R. at 12.)  He has a high school education and past relevant work as a

housekeeper, painter, and laborer in a chicken farm. (R. at 16.)

        The plaintiff filed an application for SSI on March 18, 2010. (R. at 10.) His

application was denied initially and on reconsideration. *Id.* After a hearing by an ALJ on

February 13, 2012, the ALJ issued an unfavorable decision on March 2, 2012. (R. at 10-

_____

        [1]  A report and recommendation is being filed in this case, in which one or both parties declined to consent
to disposition by the magistrate judge.

18.)  The Appeals Council denied the plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making her determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant has not engaged in substantial gainful activity since March 18, 2010, the application date (20 CFR 416.971 *et seq.*)
>
> (2)    The claimant has the following severe impairments: sarcoidosis, degenerative disc disease, angina, diabetes mellitus, obesity, and mood disorder (20 CFR 416.920(c)).
>
> (3)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> (4)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasional climbing of ramps or stairs; occasional stooping or crouching; no climbing of ladders, ropes or scaffolds; no kneeling or crawling; no frequent fingering; occasional reaching overhead with the right dominant arm; indoor work in a temperature controlled environment; and avoidance of working around harsh environmental irritants. The claimant's difficulties with attention and concentrations limit him to a range of simple, unskilled work activity.
>
> (5)    The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> (6)    The claimant was born on June 15, 1967 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> (7)    The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> (8)    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

(9)    Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

(10)    The claimant has not been under a  disability, as defined in the Social Security Act, since March 18, 2010, the date the application was filed (20 CFR 416.920(g)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  *See* 20 C.F.R. § 416.920.  If an individual is found not disabled at any step, further inquiry is unnecessary.  *Id.*; *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  Social Security Ruling (SSR) 82–61, 1975-1982 Soc. Sec. Rep. Serv. 836 (West 1983).  The plaintiff bears the burden of establishing his inability to work

within the meaning of the Act.  42 U.S.C. § 1382c(a)(3)(H)(I).  He must make a prima

facie showing of disability by showing that he is unable to return to his past relevant

work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work,

the burden is on the Commissioner to come forward with evidence that the plaintiff can

perform alternative work and that such work exists in the regional economy.  The

Commissioner may carry the burden of demonstrating the existence of jobs available in

the national economy which the plaintiff can perform despite the existence of

impairments which prevent the return to past relevant work by obtaining testimony from

a vocational expert.  *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly

tailored to determine whether the findings of the Commissioner are supported by

substantial evidence and whether the correct law was applied.  *Hays v. Sullivan*, 907

F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

Consequently, the Act precludes a *de novo* review of the evidence and requires the court

to uphold the Commissioner's decision as long as it is supported by substantial

evidence.  *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing* U.S.C. § 405(g)*;*

*Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "substantial

evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient
> to support a particular conclusion.  It consists of more than a
> mere scintilla of evidence but may be somewhat less than a
> preponderance.  If there is evidence to justify a refusal to
> direct a  verdict were the case before a jury, then there is
> "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Thus, it is the duty of this court to give careful scrutiny to the whole record to

assure that there is a sound foundation for the Commissioner's findings, and that his

conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If

4

there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to make a proper Listing analysis; (2) failing to perform a proper credibility analysis; and (3) failing to resolve a conflict between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles.

The Court will address each alleged error in turn.

## I.    Listing Analysis

The plaintiff first contends that the ALJ erred in not finding, at Step 3 of the sequential evaluation process, that his impairments met or equaled a regulatory Listing. A claimant is presumptively disabled when he has an impairment (or combination of impairments) that meets or equals a Listing. *See* 20 C.F.R. § 416.920(d). The Listings describe impairments considered severe enough to prevent an individual from performing any substantial gainful activity. *See id.* § 416.925(a). If a claimant has an impairment which meets the duration requirement and satisfies the criteria of an impairment listed in Appendix 1, the Commissioner will find the claimant disabled without considering his age, education, and prior work experience. *See* 20 CFR §§ 404.1520(d), 416.920(d). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. §§ 404.1508, 416.908.

5

The Commissioner can also determine that the claimant's impairments are *medically equivalent* to a Listing, which occurs when an impairment or combination of impairments is not specifically listed in the regulations but is at least equal in severity and duration to the criteria of a Listing.  20 C.F.R. §§ 404.1526(a), 416.926(a).

The plaintiff does not argue that he actually meets any listing.  Instead, he complains that the ALJ did not consider whether his impairments, taken together, were medically equivalent to some Listing.  Of course, the ALJ did perform an equivalency analysis regarding Listing 12.04 and the plaintiff's mental impairments.  (R. at 12.)  But, the plaintiff argues that it was error not to consider the combined effect of all his impairments.

Problematically, the plaintiff does not suggest the particular Listing to which his impairments are allegedly medically equivalent.  Relying on *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990), the plaintiff seems to imply that no such proffer is necessary, on his part, because the ALJ committed plain legal error in not performing the analysis, which was his burden to perform in the first instance.  But, the plaintiff cannot simply allege an abstract procedural wrong without articulating some correlated prejudice.  Otherwise, the law typically views the oversight as harmless.  *See Shinseki v. Sanders,* 556 U.S. 396, 409-11 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.") (citations omitted); *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error").

The Court reads nothing in *Hays* which would imply differently.  And, importantly, courts have applied the harmless error doctrine to situations where the ALJ made legal mistake at Step 3 but the plaintiff failed to identify a particular Listing or otherwise demonstrate that he could meet actually, or equivalently, a Listing. *See Cain-Wesa v. Astrue*, 2012 WL 2160443, at *17 (E.D. Wis. June 13, 2012) ("But plaintiff fails to explain

6

how her impairment(s), alone or in combination, medically equal a Listing or even to identify any particular Listing she might equal. Therefore, the ALJ's failure to say more on medical equivalence was, at most, harmless error."); *Stovall v. Astrue*, 2011 WL 2413323, at *8-9 (N.D. Tex. Apr.4, 2011) (holding that the "ALJ's step three error in failing to explain why the claimant's impairments did not meet or equal a listed impairment was harmless because the claimant did not "present[ ] any specific evidence . . . suggesting that any of his impairments met or equaled a listed impairment" and "the record [did] not indicate a likelihood or even reasonable possibility that medical equivalence would be found based on [his] impairments").

The plaintiff has made no effort to identify a Listing much less show that the combination of his impairments are equivalent to it. The ALJ conducted an equivalency analysis concerning Listing 12.04, which the plaintiff does not dispute. The Court cannot recommend remand for the ALJ to simply guess about the criteria of possible Listings, which the plaintiff himself has refused to suggest.

As a related concern, the plaintiff contends that the ALJ failed to satisfy his broader obligation to consider the combined effects of the plaintiff's impairments in making a Residual Functional Capacity ("RFC") assessment. Certainly, when a claimant suffers from multiple impairments, the ALJ must consider their combined effect in determining whether the claimant is disabled. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " SSR 96–8p. Congress has explicitly required that "the combined effect of all the individual's impairments" be considered, "without regard to whether any such impairment if considered separately" would be sufficiently severe. 42 U.S.C. § 423(d)(2)(c); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir.1989). As an

7

important "corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Walker*, 889 F.2d at 50.

But, the ALJ stated several times that he considered "all the evidence" (R. at 10) and the "entire record" (R. at 12, 13) and specifically stated that he considered the combined effect of the plaintiff's impairments (R. at 12-13, 16). The Court is permitted to take the ALJ at his word. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (taking the ALJ at his word when he stated that he considered all of the claimant's impairments in combination); *see also U.S. v. Little*, 197 F. App'x 255, 256 (4th Cir. 2006); *see, e.g., Singleton v. Astrue*, 2011 WL 7641360, at *4 (D.S.C. Nov. 30, 2011) (finding that the ALJ provided sufficient discussion based on complainant's impairments to demonstrate she considered the claimant's impairments in combination); *Thornsberry v. Astrue*, 2010 WL 146483, at *5 (D.S.C. Jan. 12, 2010) (finding that while the ALJ could have been more explicit in stating that he discussed the combined effects of the claimant's impairments, the ALJ's overall findings indicate he adequately evaluated the combined effects). Indeed, in performing his functional assessment, the ALJ discussed the totality of the evidence related to the plaintiff's varying symptomology. (R. at 13-16.) And, the variety of limitations included in the RFC confirms it. (R. at 13.) And, again, the plaintiff himself has not proposed what additional limitations would attach, beyond those already prescribed by the ALJ, if the ALJ had somehow done more in this regard.

## II.    Plaintiff's Credibility

The plaintiff also complains that the ALJ failed to properly assess his credibility. Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could

8

reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The ALJ acknowledges this two-step framework, (R. at 13), and made, by all accounts an acceptable application of it. (R. at 13-15.) The plaintiff, however, claims that the ALJ merely summarized the evidence and then repeated the RFC without actually explaining how the evidence informed his analysis. For example, the plaintiff argues that despite supportive spirometry findings (R. at 257-264), supportive findings on consultative examination (R. at 237-240), consistent x-rays (R. at 183-192, 217-228, 316, 321-329) and consistent subjective complaints (R. at 33, 206), the ALJ did not even explain how, or to what extent, the plaintiff's shortness of breath informed the RFC.

But, the fact that the plaintiff can identify evidence favorable to his position and view is not the end of the analysis. *See Blalock*, 483 F.2d at 775; *see also Shineski*, 556 U.S.

at 409-11; *Mickles*, 29 F.3d at 921; *Copeland v. Bowen*,  1989 WL 90545 at \*3 (4th Cir. 1989) (finding harmless error where only one of the ALJ's several reasons supporting an adverse credibility finding was improper).

The ALJ cited a number of reasons to reduce his view of the plaintiff's credibility.  As the ALJ found, "[a]lthough [Plaintiff] use[d] a cane occasionally, there [was] no documented evidence that this ha[d] been prescribed by any physician and there [was] no indication in the medical evidence of record that a cane [was] totally necessary to aid in the ambulation of [Plaintiff]."  (R. at 16); *see Chamberlain v. Shalala*, 47 F.3d 1489, 1495 (8th Cir. 1995) (evidence concerning the use of a cane that was not prescribed indicated claimant may have exaggerated her condition in order to get benefits).  The ALJ also reasonably considered the plaintiff's activities of daily living in finding that his subjective complaints were not credible.  (R. at 16.)  In August 2011, the plaintiff complained of neck and shoulder pain and weakness to Dr. Dawani after walking for a mile-and-a-half. (R. at 331.)  At the hearing, the plaintiff testified that he tried to perform light household chores, prepare light meals, and tried to do light outdoor activities such as raking leaves.  (R. at 44.)  *See* 20 C.F.R. § 416.929(c)(3)(I) (stating an ALJ must consider a claimant's activities); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (plaintiff's pattern of daily activities suggested the plaintiff was not disabled.).  The ALJ also reasonably considered that theplaintiff's symptoms were ameliorated with medications.  (R. at 16.)  In December 2010, the plaintiff told Dr. Dawani that he was "feeling fine" and his joint pain was relieved with Ibuprofen.  (R. at 287.)

But, maybe most importantly, the ALJ emphasized that no treating or examining physician had assigned the plaintiff any limitations greater than those in his residual functional capacity assessment.  (R. at 16); see 20 C.F.R. § 416.929(c)(4) (stating an ALJ must consider whether there are conflicts between a claimant's statements and statements by treating or non-treating sources); *Lee v. Sullivan*, 945 F.2d 687, 693 (4th Cir. 1991)

(affirming ALJ holding that claimant was not disabled where none of claimant's doctors opined that claimant was disabled). The plaintiff does not argue otherwise.

So, to the extent, the plaintiff is generally claiming that the ALJ's credibility analysis was insufficient, the plaintiff himself has failed to challenge most of the bases for it. *Copeland*, 1989 WL 90545 at *3 (finding harmless error where only one of the ALJ's several reasons supporting an adverse credibility finding was improper). To the extent the plaintiff claims that his shortness of breath is not properly reflected in the RFC, it seems that the ALJ did not believe anymore limitation was warranted. The ALJ certainly acknowledged that the plaintiff viewed his shortness of breath as serious. (See R. at 14.) But, between the professed activities of daily living and the lack of physician recommended limitations, the ALJ had substantial evidence to announce the RFC that he did. As stated, the fact that the plaintiff can produce conflicting evidence which might have resulted in a contrary interpretation is of no moment. *See Blalock*, 483 F.2d at 775. The ALJ had substantial evidence to conclude as he did and the Court will not disturb his decision.

The plaintiff also summarily complains about the ALJ's treatment of the opinion evidence. He mostly accuses the ALJ of ignoring various findings and medical records of Dr. Patrick Ryan and the Helping Hands Clinic. He does not, however, identify which records were ignored or what effect on the case they might have had. Moreover, the ALJ expressly discussed Dr. Ryan's findings and Helping Hands Clinic notes. (R. at 14-15; 237-41.) The plaintiff makes no specific challenge to those discussions.

## III.    CONFLICT WITH THE DICTIONARY OF OCCUPATIONAL TITLES

The plaintiff lastly argues that the ALJ erred because the Vocational Expert's (VE) testimony was not consistent with the plaintiff's subjective testimony or the Dictionary of Occupational Titles ("DOT"), and that the ALJ failed to elicit a reasonable explanation for the inconsistencies. The VE testified that someone of the plaintiff's age, education, and work experience, with the limitations the ALJ ultimately included in the plaintiff's RFC, could

11

perform the jobs of quality control examiner (3,900 jobs in South Carolina, 120,000 nationally), grader/sorter (1,000 jobs in South Carolina, 52,000 nationally), and parts packer (3,500 jobs in South Carolina, 212,000 nationally).  (R. at 49-50.)

The Court has already affirmed the ALJ's credibility analysis.  Any inconsistencies between the VE and the plaintiff's testimony, therefore, would not constitute reversible error.

With respect to inconsistencies between the VE's testimony and the DOT, it is, of course, well understood that occupational evidence provided by a VE generally should be consistent with the occupational information provided by the DOT.   The ALJ has a duty to ask the VE to identify and explain any conflicts with the DOT.   *See* SSR 00-4p.   The relevant portion of SSR 00-4p reads as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p.  Accordingly, the ALJ must elicit a reasonable explanation for any "apparent unresolved conflict" between the VE evidence and the DOT before relying on the VE to support a determination about whether the claimant can perform any work.  *See id.*  A VE's conflicting testimony can only be used if the ALJ finds that it is based on "other reliable publications" or the expert's own "experience in job placement or career counseling."  SSR 00-4p, 2000 WL 1898704 at *2; *see also Fisher v. Barnhart*, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (Unpublished).

The plaintiff contends that all of the identified jobs require fingering but that the ALJ found that the plaintiff should be limited to jobs that do not require any "frequent fingering." (R. at 13). Whether or not the others do, the defendant rightly responds that the job of grader/sorter, DOT § 573.687-034, 1991 WL 683994, does not require any fingering. Accordingly, there is no error with respect to that limitation because the testimony as to at least one of the recommended jobs is still effective.

The plaintiff also makes a more generalized complaint that all of the jobs require a production-paced environment, which is somehow inconsistent with his RFC. The Court would first say that the ALJ expressly queried the VE about any inconsistencies, and the VE testified that there were none. (R. at 50.) Second, the plaintiff's RFC did not include a specific limitation to non-production paced work; other courts in other cases have included such an express limitation. Cf. *Lowery v. Astrue*, 2011 WL 4368433 (D.S.C., September 19, 2011) (including a limitation to non-production paced work); *Hutchins v. Astrue*, 2010 WL 5684396 (D.S.C. December 21, 2010) (including a limitation to non-production paced work). And, the Court might be wrong, but the definition of "light work" is not automatically interpreted to include one. *See* 20 C.F.R. § 404.1567(b).

Accordingly, there was no "apparent unresolved inconsistency," which implicated the ALJ's obligation to seek a more precise explanation for it. SSR00-4p.

13

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and that he properly applied applicable law and, therefore, recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

July 29, 2013
Charleston, South Carolina

14